ASSOCIATED INVESTMENT COMPANY LIMITED PARTNERSHIP *v.* WILLIAMS ASSOCIATES IV ET AL.
(14725)

PETERS, C. J., BORDEN, BERDON, KATZ and PALMER, Js.

Argued September 28, 1993—decision released July 19, 1994

*Paul R. Kraus,* for the appellants (defendants).

*Robert E. Wright,* for the appellee (plaintiff).

*Richard Blumenthal,* attorney general, and *Robert M. Langer,* assistant attorney general, filed a brief for the office of the Attorney General, as amicus curiae.

PALMER, J. The principal issue in this appeal is whether the Connecticut constitution guarantees a right to a jury trial for actions brought under the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq.[1] We conclude that the state

[1] General Statutes § 42-110a provides: "DEFINITIONS. As used in this chapter:

"(1) 'Commissioner' means the commissioner of consumer protection;

"(2) 'Documentary material' means the original or a copy of a book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription, or other tangible document or recording, wherever situate;

"(3) 'Person' means a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity; and

"(4) 'Trade' and 'commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."

General Statutes § 42-110b provides: "UNFAIR TRADE PRACTICES PROHIBITED. LEGISLATIVE INTENT. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

General Statutes § 42-110g provides: "ACTION FOR DAMAGES. CLASS ACTIONS. COSTS AND FEES. EQUITABLE RELIEF. (a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.

constitution does not require a jury trial for CUTPA claims.[2]

The relevant facts are as follows. The plaintiff, Associated Investment Company Limited Partnership, brought an action against the defendants, Williams Associates IV, Walter J. Lewis, Jr., Norman J. Voog and Victor J. Buselli (Williams Associates), to collect on a promissory note allegedly due and owing in the principal amount of $750,000. The defendants filed an answer, special defenses and a counterclaim alleging a CUTPA violation.[3] The counterclaim alleged that the

"(b) Persons entitled to bring an action under subsection (a) of this section may, pursuant to rules established by the judges of the superior court, bring a class action on behalf of themselves and other persons similarly situated who are residents of this state or injured in this state to recover damages.

"(c) Upon commencement of any action brought under subsection (a) of this section, the plaintiff shall mail a copy of the complaint to the attorney general and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the attorney general.

"(d) In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. In a class action in which there is no monetary recovery, but other relief is granted on behalf of a class, the court may award, to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorneys' fees. In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief.

"(e) Any final order issued by the department of consumer protection and any permanent injunction, final judgment or final order of the court made under section 42-110d, 42-110m, 42-110o or 42-110p shall be prima facie evidence in an action brought under this section that the respondent or defendant used or employed a method, act or practice prohibited by section 42-110b, provided this section shall not apply to consent orders or judgments entered before any testimony has been taken.

"(f) An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."

[2] Subsequent to oral argument, the attorney general, at our request, submitted a brief on this issue.

[3] The counterclaim originally filed by the defendants contained separate counts alleging usury, unconscionability and an unfair or deceptive trade practice under CUTPA. The defendants subsequently withdrew the usury

interest rates and late fees charged by the plaintiff, together with certain of the plaintiff's collection practices and the attachment of various of the defendants' properties, constituted unfair or deceptive acts or practices. The defendants' prayer for relief sought rescission, punitive damages, costs, attorney's fees and such other relief as the court deemed just and proper.[4]

The defendants thereafter filed a claim to the jury docket, which the plaintiff moved to strike. The trial court granted the plaintiff's motion concluding that: (1) with respect to the complaint, the defendants had waived their right to a jury trial by failing to make the claim in a timely manner;[5] and (2) with respect to the counterclaim, the defendants did not have a state constitutional right to a jury trial for actions brought under CUTPA. Prior to trial, the defendants filed a motion for default and other sanctions against the plaintiff on the ground that the plaintiff had failed to attend its duly noticed deposition. The court denied the defendants' motion, and the case proceeded to trial. At the conclusion of the trial, the court rendered judgment for the plaintiff on the complaint in the amount of $1,258,180.60, and for the plaintiff on the defendants' counterclaim.

On appeal,[6] the defendants claim that the trial court: (1) improperly determined that the defendants' counterclaim alleging a CUTPA violation was not triable to a jury; and (2) abused its discretion by denying the defendants' motion for default and for other sanctions

and unconscionability counts, however, leaving only the CUTPA claim. The CUTPA count incorporated the allegations set forth in the two counts that had been withdrawn.

[4] The defendants did not seek either compensatory or nominal damages.

[5] That issue is not before us on this appeal.

[6] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

because of the plaintiff's alleged failure to attend its deposition. We conclude that the trial court properly granted the plaintiff's motion to strike the defendants' counterclaim from the jury docket, and that its denial of the defendants' motion for sanctions did not constitute an abuse of discretion.[7] We therefore affirm the judgment.

## I

The defendants assert that they are entitled to a jury trial on their counterclaim alleging a CUTPA violation under article first, § 19, of the Connecticut constitution,[8] which guarantees the right to a jury trial in all cases for which such a right existed at the time of the adoption of that constitutional provision in 1818.[9] *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 182, 629 A.2d 1116 (1993); *Skinner* v. *Angliker,* 211 Conn. 370, 373–74, 559 A.2d 701 (1989). "Article first, § 19, also provides the right to a jury trial in cases that are substantially similar to cases for which the right to a jury trial existed at common law in 1818." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.,* supra, 182. Because at common law only legal claims were tried to a jury, the state constitutional right to a trial by jury does not extend to equitable claims. *Skinner* v. *Angliker,* supra, 374; *Franchi* v. *Farmholme, Inc.,* 191 Conn. 201, 210, 464 A.2d 35 (1983).

Accordingly, in determining whether a party has a right to a trial by jury under the state constitution

---

[7] The defendants also claim that the trial court improperly denied their motion to restore the case to the jury docket. Because we conclude that the defendants were not entitled to a jury trial on their CUTPA claim, the trial court properly denied this motion.

[8] Article first, § 19, of the Connecticut constitution provides: "The right of trial by jury shall remain inviolate."

[9] CUTPA itself contains no reference to a right to a jury trial.

and General Statutes § 52-215,[10] we "must ascertain whether the action being tried . . . has roots in the common law, and if so, whether the remedy involved was one in law or equity. If the action existed at common law and involved a legal remedy, the right to a jury trial exists and the legislature may not curtail that right either directly or indirectly." *Skinner* v. *Angliker,* supra, 211 Conn. 376. "Consequently, statutory actions established since the adoption of the constitution of 1818 ordinarily fall outside the scope of the provision, 'unless, perhaps, the new remedy constitutes "a modification of existing remedies, so vital as to unduly limit and violate the right of trial by jury." ' *United States Fidelity & Guaranty Co.* v. *Spring Brook Dairy, Inc.,*

---

[10] General Statutes § 52-215 provides: "DOCKETS. JURY CASES. COURT CASES. In the superior court a docket shall be kept of all cases. In such docket immediately following the names of the parties and their attorneys in all jury cases shall be entered the word 'jury'. The following-named classes of cases shall be entered in the docket as jury cases upon the written request of either party made to the clerk within thirty days after the return day: Appeals from probate involving the validity of a will or paper purporting to be such, appeals from the actions of commissioners on insolvent estates, and, except as hereinafter provided, civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity, except that there shall be no right to trial by jury in civil actions in which the amount, legal interest or property in demand does not exceed two hundred fifty dollars or in a summary process case. When, in any of the above-named cases an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party made to the clerk; and any such case may at any time be entered in the docket as a jury case by the clerk, upon written consent of all parties or by order of court. All issues of fact in any such case shall be tried by the jury, provided the issues agreed by the parties to be tried by the court may be so tried. All cases not entered in the docket as jury cases under the foregoing provisions, including actions in which an account is demanded and judgment rendered that the defendant shall account, writs of habeas corpus and ne exeat, complaints for dissolution of marriage and all other special statutory proceedings which, prior to January 1, 1880, were not triable by jury, shall be entered on the docket as court cases, and shall, with all issues of law and issues of fact, other than those hereinbefore specified, which may be joined in actions entered on the docket as jury cases, be disposed of as court cases."

135 Conn. 294, 297, 64 A.2d 39 (1949), quoting *Meigs* v. *Theis,* 102 Conn. 579, 592, 129 A. 551 (1925)." *Bishop* v. *Kelly,* 206 Conn. 608, 618, 539 A.2d 108 (1988); *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 49–50, 578 A.2d 1054 (1990). Because CUTPA creates an essentially equitable cause of action not substantially similar to common law claims triable to a jury prior to 1818, we conclude that a jury trial is not constitutionally required for actions brought under CUTPA.

We have recently reviewed the nature and scope of the broad prohibition of CUTPA against "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [w]hether the practice, without necessarily having been previously considered unlaw- ful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes sub- stantial injury to consumers [or competitors or other businessmen]. . . ." (Internal quotation marks omit- ted.) *Cheshire Mortgage Services, Inc.* v. *Montes,* 223 Conn. 80, 105–106, 612 A.2d 1130 (1992).[11] We also

---

[11] The so-called "cigarette rule" was originally adopted by the Federal Trade Commission pursuant to its authority under § 45 of the Federal Trade Commission Act; 15 U.S.C. § 41 (1988); to prevent unfair methods of com- petition and unfair or deceptive acts or practices in or affecting commerce. See Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking, 29 Fed. Reg. 8355 (1964). The rule has subse- quently been cited with approval by the United States Supreme Court. See,

noted that "[a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Citations omitted; internal quotation marks omitted.) Id., 106.

The expansive nature of the CUTPA scheme, which we have described as establishing "an action more flexible and a remedy more complete than did the common law"; *Hinchliffe* v. *American Motors Corp.,* 184 Conn. 607, 617, 440 A.2d 810 (1981); may be traced directly to § 5 (a) (1) of the Federal Trade Commission Act (FTCA); 15 U.S.C. § 45 (a) (1);[12] the statutory provision on which CUTPA is modeled and the interpretation of which "serve[s] as a lodestar for interpretation of the open-ended language of CUTPA." *Russell* v. *Dean Witter Reynolds, Inc.,* 200 Conn. 172, 179, 510 A.2d 972 (1986). The FTCA, enacted in 1914, authorizes the Federal Trade Commission to define, identify and prevent "unfair methods of competition" and "unfair or deceptive acts or practices," language used by Congress to reach conduct beyond that proscribed

e.g., *Federal Trade Commission* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972); see also *Conaway* v. *Prestia,* 191 Conn. 484, 492–93, 464 A.2d 847 (1983). Our adoption of the criteria enumerated by the "cigarette rule" for determining whether a business practice or act violates CUTPA is consistent with the mandate of General Statutes § 42-110b (b), which provides that the interpretation of CUTPA shall be guided by the interpretation of § 5 (a) (1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts.

[12] Section 45 (a) (1) of Title 15 of the United States Code provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

at common law. *Federal Trade Commission* v. *R. F. Keppel & Bro., Inc.*, 291 U.S. 304, 310–12, 54 S. Ct. 423, 78 L. Ed. 814 (1934).[13] Indeed, "[w]hen Congress created the Federal Trade Commission in 1914 and charted its power and responsibility under § 5 [of the FTCA], it explicitly considered, and rejected, the notion that it reduce the ambiguity of the phrase 'unfair methods of competition' by tying the concept of unfairness to a common-law or statutory standard or by enumerating the particular practices to which it was intended to apply." *Federal Trade Commission* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 239–40, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972). Instead, it adopted a concept that does not "admit of precise definition but the meaning and application of which must be arrived at by . . . the gradual process of judicial inclusion and exclusion." (Internal quotation marks omitted.) *Federal Trade Commission* v. *R. F. Keppel & Bro., Inc.*, supra, 312.[14]

Likewise, our General Assembly, in adopting the sweeping language of § 5 (a) (1) of the FTCA, "deliberately chose not to define the scope of unfair or deceptive acts proscribed by CUTPA so that courts might develop a body of law responsive to the marketplace practices that actually generate such complaints." *Sportsmen's Boating Corp.* v. *Hensley*, 192 Conn. 747, 755, 474 A.2d 780 (1984). "Predictably, [therefore,] CUTPA has come to embrace a much broader range of business conduct than does the common law tort

---

[13] As originally adopted, the FTCA prohibited only unfair methods of competition. Act of Sept. 26, 1914, c. 311, § 5, 38 Stat. 717, 719. The FTCA was amended in 1938 to include a prohibition against unfair or deceptive acts or practices; Act of Mar. 21, 1938, c. 49, § 3, 52 Stat. 111 (codified as amended at 15 U.S.C. § 45 [a] [1]); conduct that is also proscribed by CUTPA. See General Statutes § 42-110b (a).

[14] Because the FTCA does not provide for a private cause of action; see *Alfred Dunhill Ltd.* v. *Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974); the issue of a right to a jury trial does not arise under federal law.

action." Id., 756. Moreover, "[b]ecause CUTPA is a self-avowed 'remedial' measure, General Statutes § 42-110b (d), it is construed liberally in an effort to effectuate its public policy goals." Id. Indeed, there is "no . . . unfair method of competition, or unfair [or] deceptive act or practice that cannot be reached [under CUTPA]." Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1973 Sess., p. 705, remarks of Attorney Robert Sils, Dept. of Consumer Protection.

In addition to establishing a standard of conduct more flexible than traditional common law claims, the expansive language of CUTPA prohibits unfair or deceptive trade practices without requiring proof of intent to deceive, to defraud or to mislead. See, e.g., *Web Press Services Corp.* v. *New London Motors, Inc.,* 203 Conn. 342, 362–63, 525 A.2d 57 (1987) (common law claims for fraud, deceit and misrepresentation require proof that defendant knew of falsity of representation, whereas CUTPA claimant need not prove defendant's knowledge that representation was false); *Sportsmen's Boating Corp.* v. *Hensley,* supra, 192 Conn. 754–57 (unlike tort claim for interference with business expectancies, which requires proof of malicious or deliberate interference with competitor's business expectations, CUTPA liability may be based solely on proof of unfair or deceptive acts); *Hinchliffe* v. *American Motors Corp.,* supra, 184 Conn. 617 (CUTPA proscribes broader range of conduct than common law action for innocent misrepresentation). Moreover, "[t]he CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain." Id.; see also *Conaway* v. *Prestia,* 191 Conn. 484, 493, 464 A.2d 847 (1983) (collection of rents by landlord prior to obtaining certificate of occupancy, although not prohibited by landlord-tenant statutes, constituted unfair trade practice as violation of public policy). Because CUTPA removes these common law obstacles to recovery;

*Hinchliffe* v. *General Motors Corp.,* supra, 617; the private cause of action created by CUTPA reaches conduct well beyond that proscribed by any common law analogue.

In view of the unique breadth and flexibility of the cause of action created by CUTPA, we conclude that it does not bear substantial similarity to a common law action triable to a jury prior to 1818. We are persuaded that CUTPA has its roots not in the common law, but rather in § 5 (a) (1) of the FTCA, itself an expression of Congress' intent to identify and prevent a wide range of business conduct not actionable at common law.

Our conclusion that CUTPA does not give rise to a legal cause of action grounded in the common law comports with the essentially equitable character of the statutory scheme. Equity may be described as "a system of positive jurisprudence founded upon established principles which can be adapted to new circumstances where a court of law is powerless to give relief." *Harper* v. *Adametz,* 142 Conn. 218, 223, 113 A.2d 136 (1955). A hallmark of equity is its "capacity of expansion [beyond the common law], so as to keep abreast of each succeeding generation and age." 1 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 67, p. 89. CUTPA, like equity, reaches beyond traditional common law precepts in establishing a fairness standard designed to "grow and broaden and mold [itself] to meet circumstances as they arise . . . ." (Internal quotation marks omitted.) M. Handler, "The Jurisdiction of the Federal Trade Commission Over False Advertising," 31 Colum. L. Rev. 527, 535 (1931). The resolution of claims requiring the application of broadly defined and deeply rooted public values such as the statute's "elusive, but [legislatively] mandated standard of fairness"; *Federal Trade Commission* v. *Sperry & Hutchinson Co.,* supra, 405 U.S. 244; has historically been the function of a court of equity. 1 J. Pomeroy, supra, §§ 59, 67. Indeed, the

United States Supreme Court has expressly likened the role of the Federal Trade Commission under the FTCA to that of a court of equity. *Federal Trade Commission* v. *Sperry & Hutchinson Co., supra,* 244 (Federal Trade Commission acts like court of equity when it defines and applies the prohibition of FTCA against unfair or deceptive business practices).

Furthermore, "[t]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law"; *Hinchliffe* v. *American Motors Corp., supra,* 184 Conn. 617; including costs and attorney's fees; General Statutes § 42-110g (d); and punitive damages. General Statutes § 42-110g (a). In addition, if a court determines that a practice is unfair or deceptive under CUTPA, it "may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief." General Statutes § 42-110g (d). We have previously acknowledged the importance to the CUTPA scheme of the availability of attorney's fees and punitive damages. *Hinchliffe* v. *American Motors Corp., supra,* 617–18. The significance of the broad equitable remedies authorized under CUTPA is underscored by the express language of § 42-110g (d), which, in affording the court discretion to order injunctive and other equitable relief *in lieu* of damages, "contemplates plaintiffs' judgments which do not include an award of money damages." Id., 618.[15] These comprehensive remedies, intended "to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts"; id.; are significantly broader than those generally available at common law. Compare *Mead* v. *Burns,* 199 Conn. 651, 666 n.8, 509 A.2d 11 (1986) (CUTPA permits recovery of punitive

---

[15] We note that equitable relief is authorized in two separate subsections of the statute, General Statutes § 42-110g (a) and (d). See *Hinchliffe* v. *American Motors Corp., supra,* 184 Conn. 618.

damages and attorney's fees not ordinarily available at common law), with *Virgo* v. *Lyons,* 209 Conn. 497, 503, 551 A.2d 1243 (1988) (cost of litigation and attorney's fees generally not recoverable at common law), and *Markey* v. *Santangelo,* 195 Conn. 76, 77–78, 485 A.2d 1305 (1985) (punitive damages recoverable at common law only upon showing of wanton or wilful malicious misconduct).[16]

Finally, there is no suggestion, either in the legislative history of CUTPA or in the language of the statute itself, that the legislature sought to codify or supplant any existing common law claim by enacting the private cause of action under CUTPA. On the contrary, the action established by CUTPA provides a remedy for a wider range of business conduct than does the common law, and CUTPA exists wholly independent of any common law claim. See *Hinchliffe* v. *American Motors Corp.,* supra, 184 Conn. 617–18; 1 D. Pope, Connecticut Actions and Remedies (1993) § 22.02. Thus, a claimant retains the right to bring a common law action or actions in conjunction with a CUTPA claim, as well as the right to a jury trial on any such common law actions that were triable to a jury prior to 1818.[17]

For these reasons, we conclude that article first, § 19, of our state constitution does not give rise to a right

---

[16] The extent to which the relief available under CUTPA constitutes an expansion of the common law is highlighted by the fact that the relief sought by the defendants does not include a claim for a legal remedy generally available at common law. Although punitive damages are recoverable at common law, they ordinarily may be awarded only if the complainant, unlike the defendants here, pleads and proves a right to recover compensatory or nominal damages. See generally 4 Restatement (Second), Torts § 908, p. 465 (1979); 5 M. Minzer, J. Nates, C. Kimball & D. Axelrod, Damages in Tort Action (1994) § 40.31; annot., 40 A.L.R.4th 18 (1985).

[17] The legislature, of course, is free to establish a statutory right to a jury trial for CUTPA claims. Moreover, the trial court, upon application of either party, may, in its discretion, order any issue of fact arising under CUTPA to be tried by a jury. See General Statutes § 52-218.

to a jury trial for claims brought under CUTPA.[18] The trial court, therefore, properly granted the plaintiff's motion to strike the defendant's counterclaim from the jury docket.

## II

The defendants also claim that the trial court's denial of their motion for default and for other sanctions for the plaintiff's failure to attend its duly noticed deposition constituted an abuse of discretion. This claim is without merit.

By notices of deposition dated March 10, 1992, the defendants served notice that they intended to take the depositions of David Einbinder, a general partner of the plaintiff, and of the plaintiff, by and through Einbinder as its general partner. On the same date, the defendants also served Einbinder with two deposition

---

[18] Appellate courts in other states are divided as to whether statutory causes of action for unfair or deceptive trade practices give rise to a state constitutional right to a jury trial. Compare *Richard/Allen/Winter, Ltd.* v. *Waldorf,* 156 Ill. App. 3d 717, 721–25, 509 N.E.2d 1078 (1987) (no right to jury trial for claim under Consumer Fraud and Deceptive Business Practices Act, which created cause of action unknown at common law), *Nei* v. *Burley,* 388 Mass. 307, 311–15, 446 N.E.2d 674 (1983) (no right to jury trial under Consumer Protection Act because terms of statute are sufficiently open-ended to embrace cause of action for which there are no common law analogues), *State ex rel. Douglas* v. *Schroeder,* 222 Neb. 473, 476–77, 384 N.W.2d 626 (1986) (no right to jury trial under Consumer Protection Act because act is essentially equitable in nature), and *Kugler* v. *Market Development Corp.,* 124 N.J. Super. 314, 320–21, 306 A.2d 489 (1973) (no right to jury trial under seventh amendment to United States constitution for action brought pursuant to Consumer Fraud Act because action under that statute is foreign to common law), and with *Waggener* v. *Seever Systems, Inc.,* 233 Kan. 517, 520–22, 664 P.2d 813 (1983) (right to jury trial under Consumer Protection Act depends on nature of underlying claim; no jury trial right for claim alleging unconscionable conduct), and *State* v. *Credit Bureau of Laredo, Inc.,* 530 S.W.2d 288, 291–92 (Tex. 1975) (right to jury trial arises under Deceptive Practices Act in action for civil penalties). Because these cases involve the interpretation of constitutional and statutory provisions, the language and history of which are unique to each state, none are controlling for purposes of this appeal.

subpoenas duces tecum,[19] one in his individual capacity as a nonparty witness and the other in his representative capacity as the party plaintiff. The first subpoena directed Einbinder to appear at the offices of the New Haven County Bar Association at 10 a.m. on March 31, 1992, to testify and to produce certain documents. The second subpoena instructed the plaintiff, by and through Einbinder, to appear at the New Haven County Bar Association offices at 2 p.m. on the same date, also to be deposed and to provide documents. Neither Einbinder nor any other representative of the plaintiff appeared on March 31, 1992, as directed.

On April 20, 1992, two days before the trial was scheduled to begin, the defendants filed a motion for default and for other sanctions against the plaintiff for its failure to appear to be deposed on March 31, 1992. The defendants sought the entry of a default and a judgment of dismissal against the plaintiff or, in the alternative, an order precluding the plaintiff from introducing and contesting certain evidence, as well as an award of costs and attorney's fees. The trial court concluded that the defendants had not filed their motion for default and for other sanctions in a timely manner and, accordingly, denied the defendants' motion.

Practice Book § 231 authorizes the trial court to grant a wide range of relief, including the relief sought by the defendants, for a party's failure to appear and testify at a duly noticed deposition. The determination of whether to enter sanctions pursuant to § 231 and, if so, what sanction or sanctions to impose, is a matter within the sound discretion of the trial court. *Rullo* v. *General Motors Corp.*, 208 Conn. 74, 78, 543 A.2d 279

---

[19] The plaintiff also asserts that the defendants failed to effect proper service of the deposition subpoenas. Because we conclude that the trial court did not abuse its discretion in denying the defendants' motion for default and for other sanctions, we need not consider this claim.

(1988). "In reviewing a claim that this discretion has been abused the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) Id., 78–79.

Under the circumstances presented, we are not persuaded that the trial court abused its discretion in declining to afford the defendants the relief that they sought. The defendants failed to provide the trial court with any reason or justification for their delay in moving for sanctions until April 20, 1992, just two days before the commencement of trial and three weeks after the date scheduled for the depositions. Because the defendants' motion for sanctions was filed on the eve of trial, the court's ability to fashion a remedy designed to vindicate the defendants' interest in obtaining Einbinder's testimony prior to trial was seriously and, so far as the record reveals, unnecessarily limited. Moreover, although the unexcused or unexplained failure to comply with a subpoena duces tecum is generally not to be countenanced, no evidence was presented to the trial court tending to prove either that Einbinder had wilfully failed to appear at the deposition, or that the defendants had been prejudiced by his failure to appear. See *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 144, 470 A.2d 246 (1984). The trial court, therefore, acted within its discretion in denying the defendants' motion for default and for other sanctions.

The judgment is affirmed.

In this opinion PETERS, C. J., and BORDEN, J., concurred.

KATZ, J., with whom BERDON, J., joins, dissenting. The majority holds that the Connecticut Unfair Trade

Practices Act (CUTPA); General Statutes § 42-110a et seq.; creates what is essentially an equitable cause of action not triable to a jury because CUTPA: (1) provides a more flexible and complete remedy than the common law; and (2) has its roots in the Federal Trade Commission Act (FTCA) and not in the common law. The majority concludes that CUTPA does not bear substantial similarity to a common law action triable to a jury prior to 1818 because an action under CUTPA proscribes a broader range of conduct than did the common law and affords greater remedies.

The majority's conclusion represents a shift from the well established test we have articulated for determining whether the right to a jury trial in a particular case is constitutionally required. As we often have stated, the right to a jury trial " 'exists not only in cases in which it existed at common law and at the time of the adoption of the constitutional provisions preserving it, but also exists in cases substantially similar thereto . . . .' " *Skinner* v. *Angliker,* 211 Conn. 370, 374, 559 A.2d 701 (1989), quoting 47 Am. Jur. 2d 639, Jury § 17 (1969); see *Swanson* v. *Boschen,* 143 Conn. 159, 165, 120 A.2d 546 (1956). I recognize that there is nothing in either the legislative history or the language of CUTPA to suggest that the legislature was attempting to codify or supplant any existing common law claim when it enacted CUTPA, and that an action under CUTPA exists wholly independent of any common law claim. The separate statutory existence of a CUTPA claim is not, however, determinative of whether a party is entitled to a jury trial. "The test is not whether the cause of action is statutory. . . . The test is whether the issue raised in the action is substantially of the same nature or is such an issue as prior to 1818 would have been triable to a jury." (Citations omitted.) *Swanson* v. *Boschen,* supra, 164–65. Although CUTPA may reach beyond traditional common law precepts, it is the

nature of the action under CUTPA that determines whether the issue in the action is one justiciable at common law with a right to a jury trial. The test "requires an inquiry as to whether the course of action has roots in the common law, and if so, whether the remedy involved was one in law or equity. If the action existed at common law and involved a legal remedy, the right to a jury trial exists and the legislature may not curtail that right either directly or indirectly." *Skinner* v. *Angliker,* supra, 376.[1]

The right to a jury trial extends beyond the common law forms of action recognized at 1818. As this court recently stated, "[w]e are not implying that the right to a jury trial does not exist in any cause of action that was not specifically recognized at common law in 1818. 'The historical test we apply is flexible and may require a jury in a new cause of action, not in existence in [1818], if it involves rights and remedies of the sort traditionally enforced in an action at law or if its nearest historical analogue is an action at common law.' " Id., 377,[2] quoting *Goar* v. *Compania Peruana de Vapores,*

---

[1] In *Skinner* v. *Angliker,* supra, 211 Conn. 378, we held that this flexible approach did not mandate a jury trial for a person asserting a claim against the sovereign because the state had been immune from suit in 1818 under the doctrine of sovereign immunity. Therefore, we concluded that the right to a jury trial under General Statutes § 31-51q would exist only if the legislature provided for it. Id.

[2] "In determining whether there is a right to jury trial under the seventh amendment, the United States Supreme Court applies a historical test in which it looks to see whether a similar cause of action was triable to a jury when the constitution was adopted in 1791. *Pernell* v. *Southall Realty,* 416 U.S. 363, 94 S. Ct. 1723, 40 L. Ed. 2d 198 (1974); *Curtis* v. *Loether,* 415 U.S. 189, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974); *National Labor Relations Board* v. *Jones & Laughlin Steel Corporation,* 301 U.S. 1, 48, 57 S. Ct. 615, 81 L. Ed. 893 (1937). Although the seventh amendment constitutional guarantee of a right to a jury trial applies only in the federal courts; *Gluck* v. *Gluck,* 181 Conn. 225, 227, 435 A.2d 35 (1980); the similarity between the state and federal tests was recognized by this court in *Swanson* v. *Boschen,* [supra, 143 Conn. 162-63]." *Skinner* v. *Angliker,* supra, 211 Conn. 379 n.9.

688 F.2d 417, 427 (5th Cir. 1982). "The cases that have required jury trials for new causes of action have involved legislative enhancement or creation of rights and duties in circumstances where the common law enforced similar rights and duties. See *Pernell* [v. *Southall Realty*, 416 U.S. 363, 370–76, 94 S. Ct. 1723, 40 L. Ed. 2d 198 (1974)]; *Curtis* [v. *Loether*, 415 U.S. 189, 195, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974)]." (Internal quotation marks omitted.) *Skinner* v. *Angliker*, supra, 211 Conn. 378.[3]

Under these principles, when a plaintiff identifies a violation of CUTPA that was substantially similar to conduct actionable at common law, the right to a jury trial must be preserved. CUTPA creates a streamlined,[4]

---

[3] This court has applied a similar analysis in evaluating whether a particular statute unconstitutionally deprives a plaintiff of the right to bring actions at common law. See *Gentile* v. *Altermatt*, 169 Conn. 267, 286, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976) ("all rights derived by statute and the common law extant at the time of the adoption of article first, § 10, are incorporated in that provision"). When the legislature crafts "a new remedy in order to displace an old one . . . [i]t is enough if there exists an adequate 'remedy by due course of law' for the underlying injury." *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 197, 592 A.2d 912 (1991). The right to redress under the new statute need not be coextensive with the rights afforded under the old one; the redress must be commensurate. The use of the reasonable alternative test to determine whether the legislature has unconstitutionally abolished a cause of action at common law reflects the same flexibility that we use to ascertain whether the legislature has created a cause of action that is reasonably similar to one that existed at common law.

[4] For example, in *Sportsmen's Boating Corp.* v. *Hensley*, 192 Conn. 747, 755–57, 474 A.2d 780 (1984), we pointed out the "the essential difference between a tort claim for interference with business expectancies and a claim under CUTPA is the standard by which the alleged acts are measured. . . . Conduct that might be actionable under CUTPA may not rise to a level sufficient to invoke tort liability. The reverse of that proposition, however, is seldom true. Provided a plaintiff shows that his or her claim is cloaked with the necessary public interest, it is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not."

Similarly, CUTPA proscribes a broader range of conduct than did the common law action for innocent misrepresentation. Accordingly, proof of

less cumbersome version of the common law in the interest of the protection of the rights of consumers and the remedial purpose[5] of the statute, not a new body of law unknown at common law. Certainly "[t]he common law has long countenanced a cause of action sounding in tort for interference with another's business practices and opportunities. . . . 'We, in this state, recognize that a cause of action does exist for unlawful interference with business and that it is not essential to that cause of action that it appear that the tort has resulted in a breach of contract to the detriment of the plaintiff. *Wyeman* v. *Deady,* 79 Conn. 414, 65 A. 129 [1906]; *Skene* v. *Carayanis,* 103 Conn. 708, 131 A. 497 [1926].' *Goldman* v. *Feinberg,* 130 Conn. 671, 674, 37 A.2d 355 (1944). . . . 'Full, fair and free competition is necessary to the economic life of a community, but under its guise, no man can by unlawful means prevent another from obtaining the fruits of his labor.' *Skene* v. *Carayanis,* supra, 714 . . . ." *Sportsmen's Boating Corp.* v. *Hensley,* 192 Conn. 747, 753–54, 474 A.2d 780 (1984).

Under the test established by this court to evaluate whether there is a constitutional right to a jury trial, in each instance that a party claims a jury trial in an action brought under CUTPA, the court must conduct an examination of the substantive prohibitions being

knowledge of the falsity and reliance on the misrepresentation are not necessary to prevail under CUTPA although they are required to sustain a cause of action for fraud, deceit or misrepresentation under the common law. *Web Press Services Corp.* v. *New London Motors, Inc.,* 203 Conn. 342, 362–63, 525 A.2d 57 (1987). These cases suggest that the plaintiff who prevails under a common law action for tortious interference or misrepresentation will also prevail under CUTPA provided the claim is cloaked with the necessary public interest.

[5] It also strikes me as incongruous for the court to preclude jury trials under CUTPA in light of the well recognized remedial aims of the statute. See General Statutes § 42-110b (d) ("[i]t is the intention of the legislature that this chapter be remedial and be so construed"). The hallmark of CUTPA is the creation of a private cause of action and the encouragement of its use.

pursued and the historical antecedent, if any, of the claim. It is clear that statutory adjustments to common law causes of action are not determinative of whether a right to trial by jury is mandated by article first, § 19, of the Connecticut constitution. This case by case determination of the relationship of the claim to its historical antecedent is consistent with the public policy prong of CUTPA that authorizes other bodies of law, including the common law, to be incorporated by reference in whole or in part. See *Conaway* v. *Prestia*, 191 Conn. 484, 492–93, 464 A.2d 847 (1983), quoting *Federal Trade Commission* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972) (in determining if a practice is unfair we look to see: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [or competitors or other businessmen]" [internal quotation marks omitted]).

This case by case analysis is also consistent with the position taken in other jurisdictions. Reference to one of these cases is instructive.[6] In *Waggener* v. *Seever Sys-*

---

[6] As the majority recognizes, there is a split among the jurisdictions as to whether statutory causes of action for unfair or deceptive trade practices give rise to a state constitutional right to a jury trial. For example, in *State* v. *Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 291–92 (Tex. 1975), the Texas Supreme Court, relying on a constitutional provision comparable to article first, § 19, of the Connecticut constitution, held that the plaintiff who claimed civil penalties was entitled to a jury trial for a violation of the Texas Deceptive Practices Act. Because that act is silent about the right to a jury, the court looked to see if the Texas constitution establishes the right. Id. Citing to article I, § 15, of the Texas constitution, which provides in part "that 'the right of trial by jury shall remain inviolate,' " the court noted that the state has protected the right to a trial by jury in those

*tems, Inc.,* 233 Kan. 517, 520–22, 664 P.2d 813 (1983), the Supreme Court of Kansas examined whether the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623 et seq.) provides for a jury trial. Although § 5 of the Bill of Rights of the Kansas constitution provides that " '[t]he right of trial by jury shall be inviolate,' " the court acknowledged that the right was not absolute. Because, in Kansas, there is no statute defining

cases where a jury would have been proper at common law. Id., 291. The court further remarked that "[t]he right to a trial by jury is not limited to the precise form of action in which civil penalties were enforceable at common law. The right exists when 'the action *involves rights and remedies of the sort typically enforced* in an action at law.' *Curtis* v. *Loether,* 415 U.S. 189, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974); 5 Moore's Federal Practice, § 38.11[7], 128 (2d ed. 1974)." (Emphasis added.) Id., 292. Following that determination, the court looked to article V, § 10, of the Texas constitution which extended the right to a trial by jury to causes in equity. Id.

I note that other jurisdictions, although not directly confronting the issue, have allowed jury trials in which state unfair or deceptive trade practices or consumer protection act claims were involved. Although none of these cases directly discuss the issue of whether a right to a jury trial exists, in each, a jury trial was held, thereby at least arguably implying that a right to a jury is viable. See, e.g., *Lexton-Ancira Real Estate Fund* v. *Heller,* 826 P.2d 819 (Colo. 1992) (jury trial used under state deceptive practices act where damages were awarded plaintiff on deceptive trade practice claim); *Georgia Society of Plastic Surgeons, Inc.* v. *Anderson,* 257 Ga. 710, 363 S.E.2d 140 (1987) (utilizing jury trial in claim of unfair trade practices under state uniform deceptive trade practices act); *Stevens* v. *Motorists Mutual Ins. Co.,* 759 S.W.2d 819 (Ky. 1988) (implied right to jury trial under state consumer protection act for issue of fact dealing with unfair, false, misleading or deceptive act where relief being sought was damages); *Baird* v. *Norwest Bank,* 255 Mont. 317, 843 P.2d 327 (1992) (using jury trial in case involving state unfair trade practices act claims mixed with common law contract claims); *Stevenson* v. *Louis Dreyfus Corp.,* 112 N.M. 97, 811 P.2d 1308 (1991) (using jury trial where one of claims involved violation of state unfair trade practices act); *State ex rel. James A. Redden* v. *Discount Fabrics, Inc.,* 289 Or. 375, 615 P.2d 1034 (1980) (jury used in state unfair trade practices act case alleging misrepresentation where relief on second count was for injunction, restitution and attorney's fees); *Schmidt* v. *Cornerstone Investments, Inc.,* 115 Wash. 2d 148, 795 P.2d 1143 (1990) (allowing jury trial on state consumer protection act claim in which damages were sought); *Industrial Indemnity Co. of the Northwest, Inc.* v. *Kallevig,* 114 Wash. 2d 907, 792 P.2d 520 (1990) (jury trial held under state consumer protection act claim, involving unfair trade practice).

what issues are triable to a jury as a matter of right, the court applied the well established guiding principles that it routinely follows in assessing whether a jury trial is mandated. The court reasoned: "(1) The right of trial by jury is a substantial and valuable right. The law favors trial by jury and the right should be carefully guarded against infringement. . . . (2) The constitutional right to a jury trial guaranteed by Section 5 . . . refers to that right as it existed at common law. . . . (3) At common law and under the Kansas constitutional provision in a suit in equity a party is not entitled to a trial by jury as a matter of right. . . . (4) In determining whether an action is one in equity the test is whether the essential nature of the action is grounded on equitable rights and is one in which equitable relief is sought. . . . (5) The issues raised by the pleadings or as modified by the pretrial order determine the nature of the action, and where the issue is not one justiciable at common law, a jury trial is not available. . . . (6) The substance of the pleadings, not the form of the pleadings, determines the character of an action as equitable or legal in nature. . . . (7) Where a court of equity obtains jurisdiction of an action for the purpose of granting some distinctively equitable relief, the court will take jurisdiction for all purposes and determine all issues in the case so that a full, effective, and determinative decree adjusting the rights of the parties may be entered and enforced." (Citations omitted; internal quotation marks omitted.) Id., 520–21. Applying these criteria, the court concluded that a claim that an action is unconscionable[7]

_____

[7] The decision by the court in *Waggener* v. *Seever Systems, Inc.,* supra, 233 Kan. 522, that a claim that certain conduct was unconscionable is equitable in nature was based on Kansas' jurisprudence and has little or no bearing on whether in our jurisdiction that is the case. As even the state in its amicus curiae brief acknowledges: "Because the public policy prong of the unfairness doctrine can include both common law and non-common law claims . . . [e]ach unfairness count will require a case by case determination of the relationship of the claim to its historical antecedent . . . ."

is a question for the court but that a claim that an action is deceptive is a question for a jury. Id., 522. The court further concluded that because the plaintiff sought rescission of the contract, an equitable remedy inconsistent with a claim for damages under the contract, he was not entitled to a jury trial. Id., 523.

This case by case analysis proposed by the *Waggener* court is both comprehensive and manageable and is, I believe, suitable for our trial courts to implement. A case by case approach considers the common law and statutory roots of CUTPA and also promotes a full analysis of the specific claim in relation to its historical origins. By applying a flexible test we could continue to recognize, consistent with our own case law, that CUTPA reaches a wide range of conduct. For example, an unfair method of competition may include conduct as diverse as actual or incipient violations of the antitrust laws to common law business torts, including interference with business expectancies. *Sportsmen's Boating Corp.* v. *Hensley,* supra, 192 Conn. 755–56; see generally D. Belt, "Private Actions Under the Connecticut Unfair Trade Practices Act," 64 Conn. B.J. SI-3, SI-11–12 (1990); J. Morgan, "The Connecticut Unfair Trade Practices Act: Determining Standards of Conduct," 62 Conn. B.J. 74, 94–95 (1988); A. Neigher, "On the Connecticut Unfair Trade Practices Act," 4 Conn. L. Trib., No. 30, p. 6 (July 24, 1978). I therefore would continue to recognize the distinct and diverse causes of action under the CUTPA umbrella and allow our trial courts to act on a case by case basis.

Accordingly, in determining whether the defendants are entitled to a jury trial the court must review the underlying causes of action. The bases for the unfair trade practices for which the defendants seek relief are: fraud in the inducement, usury, breach of contract, tortious interference with a contractual obligation, vexatious litigation, slander and intentional infliction of

emotional distress. All of these are common law actions upon which there was a right to trial by jury before 1818.

In closing, there are two additional points that deserve mention. The first relates to my skepticism regarding the majority's characterization that CUTPA is essentially equitable in nature. The majority points to two separate parts of CUTPA that provide for equitable relief; General Statutes § 42-110g (a) and (d); as support for its position that CUTPA is equitable in nature. This inclusion of provisions addressing equitable relief demonstrates that in certain instances, as when a victimized consumer cannot put a precise dollar figure on his or her loss, a CUTPA remedy will nevertheless be available; *Hinchliffe* v. *American Motors Corp.,* 184 Conn. 607, 617–19, 440 A.2d 810 (1981); and is merely consistent with the remedial purpose of the statute. To state that because CUTPA provides for equitable relief supports the conclusion that CUTPA is primarily equitable in nature is as myopic as stating that because a party who brings an action for breach of contract asks only for specific performance means that no action for breach of contract seeking monetary damages is ever entitled to a trial by jury. Additionally, the majority's assessment runs contrary to our conclusions regarding other statutes that contain provisions for equitable and legal claims. For example, in *Miles* v. *Strong,* 68 Conn. 273, 286, 36 A. 55 (1896), we were required to decide whether the statute authorizing an action to quiet title, chapter 66 of the Public Acts of 1893 (Act), was unconstitutional because it denied the right of trial by jury. We stated that "[u]nder section one of the Act, the claims to be tried and determined in proceedings brought under the Act, may plainly include legal claims proper to be tried by a jury, as well as equitable claims proper to be tried by a court of equity; and in the absence of any provi-

sions in the Act which either expressly or by necessary implication prohibit trial by jury, the fair presumption is that the right to try the former class of questions to a jury is preserved to the parties." Id. We further noted that the Act neither expressly provided for, nor expressly, or by implication, prohibited a trial by jury. Id. Accordingly, we concluded that other provisions of existing law, including common law, controlled. Id. We therefore rejected the claim that the Act of 1893 was unconstitutional because it denied parties the right of a trial by jury. Id., 287.

Finally, I am unpersuaded that CUTPA draws its strength exclusively from the FTCA. Although "[i]n deciding what constitutes an unfair or deceptive act or practice, courts of this state are encouraged to look to interpretations of the [FTCA]; 15 U.S.C. [§] 45 (a) (1); rendered by both the federal trade commission and the federal courts"; *Hinchliffe* v. *American Motors Corp.,* supra, 184 Conn. 617; the historical antecedent is as much the common law of Connecticut. General Statutes § 42-110b (b) requires that our interpretation of CUTPA be guided by the FTCA; *Connelly* v. *Housing Authority,* 213 Conn. 354, 363, 567 A.2d 1212 (1990); however, CUTPA provides a private cause of action and therefore achieves the protection of the rights of consumers in a fundamentally different manner than the FTCA. Moreover, the legislature, in its earlier amendments to CUTPA, was attempting "to find methods, acts or practices not heretofore specifically declared unlawful by the [Federal Trade Commission] or the federal courts to be prohibited by . . . CUTPA." R. Langer & D. Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 Conn. B.J. 388, 391 (1980). I am therefore unpersuaded by the fact that the "Federal Trade Commission acts like [a] court of equity when it defines and applies the prohibition of FTCA against unfair or deceptive business practices."

For all these reasons, I respectfully dissent with the majority's holding that the state constitution does not give rise to a right to a jury trial for claims brought under CUTPA.[8]

---

[8] As the majority acknowledges, there is authority for the proposition that in some jurisdictions at common law a claimant must, at a minimum, plead and prove either compensatory or nominal damages in order to recover punitive damages. See 4 Restatement (Second), Torts § 908, p. 465 (1979); 5 M. Minzer, J. Nates, C. Kimball & D. Axelrod, Damages in Tort Action (1994) § 40.31; annot., 40 A.L.R.4th 18 (1985). It is unclear under Connecticut common law, however, whether: (1) it is necessary to plead and prove nominal damages in order to recover punitive damages; and (2) nominal damages are the equivalent of "ascertainable loss." In this case, the defendants had to plead an ascertainable loss in their counterclaim in order to state sufficiently a claim under CUTPA. *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 612–13. Because it is yet unresolved under Connecticut common law whether doing so entitles the defendants to punitive damages, I withhold judgment as to whether the claims for relief in this case have a common law analogue, thereby entitling the defendants to a jury trial.