[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These are two separate actions that have not yet been but should soon be consolidated for trial. The first action (#380135) is in two counts. In the first count, the plaintiff, The Law Offices of Ira B. Charmoy, alleges that in 1993 it represented the defendants Edward and Virginia Lockery in a case in U.S. Bankruptcy Court for the District of Connecticut pursuant to an appointment by the Bankruptcy judge and that, on January 13, 1994, it was awarded attorney's fees of $38,541.99 by Judge Schiff. The plaintiff alleges that the defendants have defaulted on payments of that sum and that $33,486.43 plus interest is due and owing. In the second count, the plaintiff alleges that in 1999 the defendant Edward Lockery executed a retainer agreement pursuant to which the plaintiff rendered services for which $2,707.50 remains owing.
In the second action (#382937), the same plaintiff alleges that the defendants Edward and Virginia Lockery fraudulently transferred three parcels of property to Susan Lockery with the intent of avoiding the plaintiff's debt or hindering its collection, in violation of General Statutes §§ 52-552e, 52-552f.[1] Municipal Property Management, LLC also has been named as a defendant in this action although its interest is not stated in the complaint.
The defendants have filed an answer, special defenses and counterclaims in both files. In their third special defense and first count of their counterclaim they allege that the plaintiff has sought to collect far more than it is owed, and that such conduct is a violation of the Connecticut Unfair Trade Practices Act. General Statutes § 42-110a et seq. The plaintiff has moved to strike both the third special defense and the first count of the counterclaim.
 I
The plaintiff moves to strike the third special defense on the grounds CT Page 1012 that CUTPA is not a proper special defense. In support of its motion, the plaintiff argues that CUTPA is an actionable right" and should be brought as a counterclaim and not as a special defense. The defendants respond that it would be "odd" to state that "conduct constituting unfair trade practices in the very relationship which is the subject matter of the plaintiff's complaint would not bar the plaintiff from recovering, i.e., that it would not constitute a defense to the plaintiff's action."
"A party wanting to contest the legal sufficiency of a special defense may do so by filing a motion to strike. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . Danbury v. Dana Investment Corp., 249 Conn. 1, 17,730 A.2d 1128 (1999); Practice Book § 10-50. In ruling on a motion to strike, the court must accept as true the facts alleged in the special defenses and construe them in the manner most favorable to sustaining their legal sufficiency. . . ." (Citation omitted; internal quotation mark omitted.) Barasso v. Rear Still Hill Road, LLC, 64 Conn. App. 9,13, 779 A.2d 198 (2001).
"Connecticut case law clearly allows, in one lawsuit, a claim for damages — an action at law — and a claim that a conveyance should be set aside as fraudulent — an equitable action." Crepeauv. Gronager, 41 Conn. App. 302, 315, 675 A.2d 1361 (1996). Thus, to the extent that the plaintiff seeks to set aside a fraudulent conveyance, it is an equitable action. Equitable defenses generally may be pleaded in response to equitable actions. Norwalk Savings Society v. Krondes,
Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 277459 (January 9, 1995, Levin, J.)
"CUTPA creates an essentially equitable cause of action. . . ."Associated Investment Co. v. Williams Associates IV, 230 Conn. 148, 155,645 A.2d 505 (1994). Several Superior Court decisions have indicated that "CUTPA is a remedial statute that gives rise to a cause of action and is not properly raised as a special defense." SNETCO v. Guardian Systems,Inc., Superior Court, judicial district of New Raven, Docket No. 358590 (January 23, 1995, Martin, J.); see also Stanley Works v. Halstead NewEngland Corp., Superior Court, judicial district of New Britain, Docket No. 506367 (May 18, 2001, Shapiro, J.).
Although the end result may be the same, in the view of this court the appropriate analysis is not to look at the CUTPA label which the defendants' incorporate into their special defense but to look at the substance of the allegations in that defense. Courts generally look past such labels, or at least do not bind parties to them, and examine the CT Page 1013 substance of what is alleged or to the relief sought. See, e.g., Statev. Dash, 242 Conn. 143, 152, 698 A.2d 297 (1997); Doe v. YaleUniversity, 252 Conn. 641, 689, 748 A.2d 834 (2000) ("The question is not the label placed on the claim."); Danbury v. Dana InvestmentCorporation, supra, 249 Conn. 19; (defendant "gains nothing by attaching a CUTPA label to those facts."); State v. Smith, 207 Conn. 152, 176,540 A.2d 679 (1988) ("The essential nature of a proceeding is not determined by its form or label. . . ."); Dunham v. Dunham, 204 Conn. 303,316-17, 528 A.2d 1123 (1987); Home Oil Co. v. Todd, 195 Conn. 333, 340,487 A.2d 1095 (1985); E. F. Construction Co. v. Stamford,114 Conn. 250, 258, 158 A. 551 (1932); Moulton Brothers, Inc. v.Lemieux, 74 Conn. App. 357, 361-62, ___ A.2d ___ (2002).
"To hold the plaintiff strictly to the label on his filing would exalt form over substance." Whalen v. Ives, 37 Conn. App. 7, 17, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995). "In ruling on a motion to strike, the court must accept as true the facts alleged in the special defenses and construe them in the manner most favorable to sustaining their legal sufficiency." Barasso v. Rear Still Hill Road, LLC, supra,64 Conn. App. 13. Accordingly, the court turns to the facts alleged in the third special defense.
The third special defense alleges:
"1. The plaintiff, insofar as its financial concern are concerned, is engaged in business of [sic] commerce.
"2. The plaintiff, by itself or through its agents and attorneys, has continually sought, by letter and otherwise, to collect far more than it is owed, without regard to any breach of its agreement with the defendants Edward Lockery and Virginia Lockery.
"3. Said conduct is a violation of the Connecticut Unfair Trade practices Act, § 42a-110a [sic] et seq., C.G.S."
Insofar as these allegations allege inequitable conduct by the plaintiff, they may be considered in light of the plaintiff's equitable claim to set aside a fraudulent conveyance. "It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he CT Page 1014 must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply. . . .
"Because the doctrine of unclean hands exists to safeguard the integrity of the court . . . [w]here a plaintiff's claim grows out of ordepends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have. . . . The doctrine generally applies [only] to the particular transaction under consideration, for the court will not go outside the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing. The wrong must . . . be in regard to the matter in litigation. . . . Though an obligation be indirectly connected with an illegal transaction, it will not thereby be barred from enforcement, if the plaintiff does not require the aid of the illegal transaction to make out his case. . . . In addition, the conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine, rather than the interests of a third party . . . (Citations omitted; emphasis added; internal quotation marks omitted.) Thompson v. Orcutt, 257 Conn. 301, 310-11,777 A.2d 670 (2001), appeal after remand, 70 Conn. App. 427, 800 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002); see id., 257 Conn. 312, citing Salzman v. Bachrach, 996 P.2d 1263, 1269 (Colo. 2000) ("[C]ourts apply [doctrine of unclean hands] only when a plaintiff's improper conduct relates in some significant way to the claim he [or she] now asserts. Otherwise, only those leading pristine and blameless lives would ever be entitled to equitable relief.").
Although the alleged wrong of which the defendants complain may semantically be said to "be in regard to the matter in litigation," in no way can it be said that the "plaintiff's claim grows out of or depends upon or is inseparably connected with" that alleged wrong. CompareThompson v. Orcutt, supra, 257 Conn. 301. The wrong of which the defendants complain is the plaintiff's efforts to collect a debt from the defendants. Those efforts have nothing to do with the defendants' conduct in incurring the debt nor with their alleged fraudulent conveyance. The plaintiff does not require the aid of any wrong it has committed to make out its case. Nor is there any suggestion that the integrity of the court will be compromised if it affords the plaintiff an equitable remedy. Even accepting the facts alleged in the special defenses as true, in no conceivable way do they state a legally sufficient equitable defense to the plaintiff's claim of fraudulent conveyance. CT Page 1015
 II
The defendants reallege the third special defense in the first count of their a counterclaim, in which they claim a violation of CUTPA. The plaintiff moves to strike this count of the counterclaim.
The plaintiff is a law firm. "CUTPA applies to the conduct of attorneys" but "only the entrepreneurial [or commercial] aspects of the practice of law are covered by CUTPA." (Internal quotation marks omitted.)Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 79, 717 A.2d 724 (1998); Haynes v. Yale-New HavenHospital, 243 Conn. 17, 34-35, 699 A.2d 964 (1997). Quite clearly, the collection of a fee is an entrepreneurial or commercial aspect of the practice of law. See Haynes v. Yale-New Haven Hospital, Supra243 Conn. 35-36, citing Ikuno v. Yip, 912 F.2d 306, 312 (9th Cir. 1990) (observing that practice of law may give rise to consumer protection act claims when the actions at issue are chiefly concerned with "entrepreneurial" aspects of practice, such as billing practices).
"It is well settled that in determining whether a practice violates CUTPA [Connecticut courts] have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice . . . offends public policy as it has been established by the statutes, the common law or otherwise . . . (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businessmen]." (Internal quotation marks omitted.) Fink v.Golenbock, 238 Conn. 183, 215, 680 A.2d 1243 (1996). "All three criteria do not have to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent, it meets all three." (Internal quotation marks omitted.) Id.
"According to [General Statutes] § 42-110b (b), courts construing the scope of CUTPA "shall be guided by interpretations given by the federal Trade Commission and the federal courts to Section 5(a) (1) of the Federal Trade Commission Acts (15 U.S.C. § 45 (a) (1). . . ." (Footnote omitted; internal quotation marks omitted.) Larsen ChelseyRealty Co. v. Larsen, 232 Conn. 480, 498, 656 A.2d 1009 (1995). "As early as 1964, an attorney who had prepared a dunning letter and had participated in a collection scheme violative of 15 U.S.C. § 45 (a) (1) was held to have himself violated the FTC Act and was enjoined from using threats of legal action in connection with the unlawful scheme. In reWilson Chemical Co., 64 F.T.C. 168, 186-87, 190 (1964)." Heslin v.CT Page 1016Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510, 519,461 A.2d 938 (1983).
Paragraph two of the first count of the counterclaim alleges: "The plaintiff, by itself or through its agents and attorneys, has continually
sought, by letter and otherwise, to collect far more than it is owed,without regard to any breach of its agreement with the defendants Edward Lockery and Virginia Lockery." (Emphasis added.)
The plaintiff contends that the defendants' counterclaim is a conclusion of law that is unsupported by sufficient facts to show that the "plaintiff has offended public policy or otherwise violated some established concept of fairness. . . ."[2] To support this position, the plaintiff claims that the Bankruptcy Court has already determined that the fee in question is reasonable and appropriate, and that "this finding was unchallenged by the defendants. . . ." The defendants argue that the plaintiff's motion to strike refers almost entirely to facts outside of the pleading, and that the facts pleaded in the counterclaim satisfy the requirements for bringing an action under CUTPA.
The defendants are, of course, correct. "In deciding upon a motion to strike or a demurrer, a trial court must take the facts to be those alleged in the complaint [being attacked]; Blancato v. FeldsparCorporation, 203 Conn. 34, 36, 522 A.2d 1235 (1987); DeMello v.Plainville, 170 Conn. 675, 677, 368 A.2d 71 (1976); and cannot be aided by the assumption of any facts not therein alleged.' Fraser v.Henninger, 173 Conn. 52, 60, 376 A.2d 406 (1977); Wexler ConstructionCo. Housing Authority, 144 Conn. 187, 194, 128 A.2d 540 (1956). Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the pleadings [being challenged], the [movant] must await the evidence which may be adduced at trial, and the motion should be denied."Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149
(1990).
Seeking to collect a just debt but stating that the amount due is greater than that actually owed does not necessarily satisfy the standard for a CUTPA claim, at least where such a statement is the product of mistake. See, e.g., Mulvey v. Rucci, Burnham, Carta Edelberg,
Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 174702 (May 29, 2002). That a practice does not necessarily violate CUTPA, however, is not the test this court must employ on a motion to strike. "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270-71, 709 A.2d 558 (1998) Given the explicit CT Page 1017 allegations of the counterclaim — that the plaintiff continually
sought by various means to collect far more than was due him, in breach of an agreement with the defendants — and the facts that could be provable under them, it cannot be said that the counterclaim would not support a cause of action.
The motion to strike in each file is granted as to the third special defense and denied as to the first count of the counterclaim.
 BY THE COURT ___________________ Bruce L. Levin Judge of the Superior Court