[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON DEFENDANT'S MOTION TO STRIKE FROM JURY DOCKET
The defendant has moved to strike this case from the jury list, raising what appears to be the yet undecided issue of whether a plaintiff alleging employment discrimination in violation of General Statutes § 46a-100 has a right to a jury trial under that provision.
The plaintiff, who is a former employee of the defendant, alleges that he was discharged because of his age in violation of General Statutes § 46a-60(a)(1). He brings this lawsuit pursuant to General Statutes § 46a-100 after having obtained a timely release from the Connecticut Commission on Human Rights and Opportunities.
The plaintiff claimed this case to the jury docket and the defendant now moves, pursuant to Practice Book § 282, to strike it from the docket. The defendant's argument is twofold. First, it points out that the legislature has not specifically provided for a jury trial in actions brought pursuant to General Statutes § 46a-100. Second, relying on the constitutional analysis set forth in Bishop v. Kelly, 206 Conn. 608, 618,539 A.2d 108 (1988) and Associated Investments Co. v. Limited Partnership,230 Conn. 148 (1994), the defendant argues that Article I, Section 19 of the Connecticut Constitution does not mandate a jury trial in this matter because no similar cause of action for which there was a right to a jury trial existed at common law in 1818 when the Connecticut Constitution was adopted.
This court's inquiry must begin with whether § 46a-100, properly construed, gives the plaintiff the right to a jury trial. It will be necessary to consider whether the Connecticut Constitution provides such a right only if the court finds that no such right is provided by the statute. "Established wisdom counsels us to exercise `self-restraint' so as to `eschew unnecessary determinations of constitutional questions.'" McConnellv. Beverly Enterprises-Connecticut, Inc., 209 Conn. 692, 702,553 A.2d 596 (1989).
 I.
General Statutes § 46a-100[1] creates a cause of action for any employee who has been the victim of a discriminatory employment practice in violation of General Statutes § 46a-60. Section 46a-60 prohibits discrimination in the hiring, discharge and conditions of employment on the basis of certain enumerated CT Page 12578 characteristics including race, age, sex, marital status and physical and mental disability.[2]
General Statutes § 46a-104, in turn, provides that "[t]he court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs." (Emphasis added.) The dispositive question arising out of the use of the word "court", therefore, is whether the legislature intended "court" to include both judge and jury, or judge alone.
"We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." Lauer v.Zoning Commission, 220 Conn. 455, 459-60, 600 A.2d 310 (1991). Statutory language is to be given its plain and ordinary meaning, and if such language is unambiguous it is assumed that the language expresses the intent of the legislature. 2A N. Singer, Sutherland Statutory Construction § 45.01 (4th ed. 1984 Rev.).State v. Blasko, 202 Conn. 541, 522 A.2d 753 (1987). If the language is ambiguous then resort is made to extrinsic aids, such as the legislative history and the circumstances and purpose surrounding the statute's enactment. Id.
In Bishop v. Kelly, supra, 206 Conn. 616, the Supreme Court concluded that "[i]n legal usage, authority conferred upon a `court' normally contemplates action by a judge and not by a jury."[3] Acknowledging that it has, "in rare circumstances, construed the term "court" in other statutes to include the jury"[4]; Id.; the Court concluded that "ordinary usage . . . mandating action by the `court'" does not include action by the jury. Id.
The legislative history of § 46a-100 sheds little light on the question of whether the legislature intended to provide plaintiffs with the right to a jury trial. While it is clear that the legislature was concerned with reducing the backlog of cases at the Commission on Human Rights and Opportunities; CT Page 12579 see, e.g., 34 H.R. Proc., Part 23 1991 Session p. 8918, Remarks of Representative Rell; "[m]any of the cases before [CHRO] simply cannot be handled . . .; there was no explicit discussion during either the floor debate or the committee hearings[5]
concerning the availability of a jury trial. Instead, reference was repeatedly made to the "court" or to the "judicial system". "This allows for direct access to the court". Id. "Employee discrimination complaints would only be taken to court after the CHRO had acted". Remarks of Representative Adamo, Id., 8908; "I think it's only fair to the parties that they have full access to the court system". Remarks of Representative Coleman, Id., 8918. Reference to the legislative history, in short, provides little assistance in discerning the meaning of the word "court" as used in § 46a-104.
Finally, it is appropriate to make reference to the use of the word "court" in the other anti-discrimination provisions contained in Chapter 814. "Ordinarily we read the same terms in the same statute to have the same meanings"; AirKaman,Inc. v. Groppo, 221 Conn. 751, 758, 607 A.2d 410 (1992); and the meaning of a particular phrase in a statute is to be determined by reference to the use of that phrase in other parts of the same statute. Doe v. Institute of Living, Inc., 175 Conn. 49,392 A.2d 491 (1978).
General Statutes § 46a-89(a) authorizes the Commission on Human Rights and Opportunities to "bring a petition in equity in the superior court" for the purpose of "seek[ing] temporary injunctive relief" on behalf of a complainant who may suffer irreparable harm as a result of a discriminatory practice. Section 46a-89a provides that "the court, or any judge thereof, after hearing, shall issue a temporary injunction upon finding that irreparable loss of damage will result to the complainant. . ." As used in 46a-89a the term "court" can only refer to a judge as injunctive relief is an equitable remedy entrusted to the discretion of a judge, not a jury. Pet v. Department ofHealth Services, 207 Conn. 346, 542 A.2d 672 (1988).
Application of the doctrine that the same words in the statute should be accorded the same meaning; Doe v. Instituteof Living, supra; suggests that the legislature intended that "court" in 46a-104 signify the judge and not the jury. While the usual and customary definition of "judge"; Bishop v.Kelly, supra; also suggests the legislature did not intend to provide a jury trial, the absence of any explicit discussion of CT Page 12580 this issue in the legislative debate tempers that conclusion. In short, the evidence suggests, but hardly compels the conclusion that the legislature did not intend to provide the right to a jury trial in actions brought pursuant to General Statutes § 46a-100. In light of this, it is necessary to consider whether the right to a jury trial is guaranteed by Article I, Section 19
of the Connecticut Constitution.
 II
Article I, Section 19 of the Connecticut Constitution provides that "The right of trial by jury shall remain inviolate." The standards for determining whether a party is entitled to a trial by jury under the Connecticut Constitution and General Statutes § 52-215[6] are well established. "[W]e must ascertain whether the action being tried . . . has roots in the common law, and if so, whether the remedy involved was one in law or equity. If the action existed at common law and involved a legal remedy, the right to a jury trial exists and the legislature may not curtail that right either directly or indirectly.Associated Investment Co. v. Williams Associates, supra,230 Conn. 152 (Katz, J., dissenting), quoting United States Fidelity Guaranty Co. v. Spring Brook Dairy Inc., 135 Conn. 294, 29764 A.2d 39 (1949).
"We have held, therefore, that the right to a jury trial exists both in cases in which it existed at common law at the time of the adoption of the constitutional provisions preserving it and in cases substantially similar thereto." Ford v.Blue Cross Blue Shield of Connecticut, Inc., 216 Conn. 40, 50578 A.2d 1054 (1990). (Emphasis in the original.) "We are not implying that the right to a jury trial does not exist in any cause of action that was not specifically recognized at common law in 1818. The historical test we apply is flexible and may require a jury in a new cause of action, not in existence in [1818], if it involves rights and remedies of the sort traditionally enforced in an action at law or if its nearest historical analogue is an action at common law." Skinner v. Angliker,211 Conn. 370, 377 n. 2, 559 A.2d 701 (1989). (Internal quotations and citations omitted.)
Consideration of the defendant's claim in this case requires, therefore, a two part analysis. The first question is whether the cause of action established in § 46a-100 was triable to the jury prior to 1818, or is substantially similar to CT Page 12581 cause of action triable to a jury prior to 1818. The second question is whether § 46a-100 provides an equitable or legal remedy.
 A
Neither party claims that a cause of action based on unlawful employment discrimination existed at common law prior to 1818. Both agree, however, that the closest common law analogue to the cause of action established in § 46a-100 is an action for wrongful discharge. Because this cause of action was not recognized until recently; Sheets v. Teddy Frosted Foods,Inc., 179 Conn. 471, 427 A.2d 385 (1980); the defendant argues that the right to trial by jury does not attach to a § 46a-100
action. The available historical evidence casts doubt on the defendant's position.
Beginning in the 14th century in feudal England, the paternalistic relationship between lord and servant provided the foundation for the evolving legal relationship between employer and employee. As originally codified in the Ordinance of Labourers, 23 Edward II, c. 2 (1349), lord and servant had imposed on them reciprocal rights and responsibilities designed to protect their relationship. 1 W. Blackstone, Commentaries on the Law of England 413 (1969 ed.). The Ordinance of Labourers provided that the employer could not "put away his cause", and that apprentices could be discharged only for "reasonable cause." Id., 413-14, n. 124.
In the sixteenth century, a subsequent statute "prohibited an employer from discharging an employee `unless it be for some reasonable and sufficient cause or matter.'" Magnan v.Anaconda Industries, Inc., 193 Conn. 558, 561, 479 A.2d 781
(1984), quoting Statute of Labourers, 5 Eliz. C. 4 (1562) (reprinted in 6 Pickering's Statutes 159-60 (1763)). Although this statute was subsequently repealed, English common law adhered to the doctrine that a contract of employment for an indefinite duration was presumptively for a term of one year[7]; Id.; and that a wrongfully discharged employee had a available a number of remedies including: (1) an action in assumpsit for quantum meruit; (2) an action in indebitatus assumpsit; or (3) an action for breach of contract for wrongful discharge. See, generally, Note, "A Reexamination of the Constitutional Right to A Jury Trial Under Title VII of the Civil Rights Act of 1964", 26 Tulsa L.J. 571, (1991); and Beesley v. Hartford Fire InsuranceCT Page 12582Co., supra.
While the English rule allowing a discharged employee to maintain a wrongful termination action against his employer was the predominant American rule throughout the eighteenth century; 1 C. Labatt, Commentaries on the Law of Master and Servant § 156 (2d ed. 1913); Feinman, "The Development of the Employment at Will Rule," 20 Amer. J. Leg. Hist. 118 (1976); it is unclear whether Connecticut adhered to it.[8] What is certain is that the employment at will doctrine was not propounded until the late nineteenth century when reference was first made to it in H. Wood, A Treatise on the Law of Master and Servant § 134, (1877)[9]. The employment at will doctrine, which holds that "an employment contract of indefinite duration was terminable at the will of either party `for good cause, for no cause or even for cause morally wrong'"; Magnan v. Anaconda Industries Inc., supra, 563, quoting Payne v. Western Atlantic R. Co., 81 Tenn. 507,519-20 (1915); was not expressly adopted in Connecticut until 1915.[10] Boucher v. Godfrey, 119 Conn. 622, 178 A.2d 655
(1935).
Connecticut's employment at will rule remained intact until 1970 when Connecticut, like most other jurisdictions that recognized the severity of the employment at will doctrine; Note, "Protecting at Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith," 93 Harv. L. Rev. 1816 (1980); approved a common law cause of action in tort for discharge "where the discharge contravenes a clear mandate of public policy." Sheets v. Teddy's Frosted Foods, Inc., supra 179. Although the Sheets ruling was described as "a radical change in the law"; Mooney and Pingpank, "Wrongful Discharge: A "New" Cause of Action?", 54 Conn. B.J. 213, 214 (1980);[11] when placed in its historical context it can more appropriately be described as "back to the future."
While the historical evidence is not without ambiguity it suggests that the law governing employer-employee relations and the causes of action arising out of that relationship has not been static, but rather has evolved in response to changing conditions and attitudes. Feinman, "The Development of the Employment at Will Rule," supra. The stronger and more persuasive evidence indicates that prior to 1818 the majority American rule recognized a cause of action for wrongful discharge;Magnan v. Anaconda Industries, Inc., supra, 562; Note, "Implied Contract Rights to Job Security," 26 Stan. L. Rev. 335 (1974). CT Page 12583 With the exception of Tapping Reeves "boldly claim[ing]" in 1846 "[w]ithout citation of supporting authority"; Magnan v. AnacondaIndustries, Inc., supra, 562 n. 7; that Connecticut did not adhere to the majority view, there is no evidence to support the argument that at common law prior to 1818 Connecticut, consistent with the prevailing American rule, did not recognize a cause of action for wrongful discharge. An early Connecticut case on this subject, although involving a contract of employment for a fixed term, suggests that a cause of action alleging wrongful discharge actions was recognized. Champion v.Hartshorne, 9 Conn. 564, 567 (1833) ("And not only so, but if the dismissal was without cause, he had given the defendant a right to demand the payment of his wages as fully as though every stipulation in the contract had been performed on his part").
The historical evidence also demonstrates that the employment at will doctrine was not adopted in America until 1875; Wood, A Treatise on the Law of Master and Servant § 156, supra;Magnan v. Anaconda Industries, Inc., supra; and was not recognized by the Connecticut Supreme Court until 1935. Boucher v.Godfrey, supra. Although the right to a jury trial depends, in part, on "an abstruse historical search for the nearest 18th century analog"; Tull v. United States, 481 U.S. 412, 421
(1987), quoting Ross v. Bernhard, 396 U.S. 531, 538 n. 10 (1970);[12] that search discloses a sufficient basis for concluding that an action under § 46a-100 is substantially similar to an action recognized at common law prior to the adoption of the Connecticut Constitution in 1818.
This conclusion finds support in Connecticut precedent and federal decisions. See, e.g., Ford v. Blue Cross andBlue-Shield of Connecticut Inc., supra, 40, affirming the right to a jury trial under General Statutes § 31-290 and concluding that an action to redress a retaliatory firing for seeking benefits under the Worker's Compensation Act has its roots in the common law. "It should be recalled that our modern law of torts has its origins in the common law of trespass and trespass on the case. W. Prosser W. Keeton, Torts (5th Ed. 1984) § 6, pp. 28-31. We conclude, therefore, that because the classical theory upon which recovery is based brought pursuant to § 31-290a was redressable at common law, the plaintiff's action was properly tried to a jury." Id., 52-53.[13]
Finally, although the United States Supreme Court has not decided whether there is a right to a jury trial under Title CT Page 12584 VII of The Civil Rights Act of 1964; 42 U.S.C. § 2000a-2000h; (1988);[14] Lytle v. Household Manufacturing, Inc.,110 S.Ct. 1331 (1990); some federal courts have likened the Title VII unlawful employment practice cause of action to common law causes of action. See, e.g., Ochoa v. American Oil Company,338 F. Sup. 914, 919 (S.D. Texas 1972) ("It clearly appears from this that the Title VII action for the unlawful employment practice of discriminatory discharge . . . finds its historical counter-part in the common law action for breach of contract by wrongful discharge, which was, of course, tried to a jury.) Likewise, Mr. Justice Marshall has observed that "[a]n action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of emotional distress. Indeed, the contours of the latter tort are still developing, and it has been suggested that `under the logic of the common law development of a law of insult and indignity, racial discrimination might be treated as a dignitary tort.'" Curtis v. Loether,415 U.S. 189, 195 n. 10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), quoting C. Gregory H. Kalven, Cases and Materials on Torts 961 (2nd ed. 1969).
While the historical analysis required under Article I, Section 19 is necessarily impressionistic, the evidence points to the conclusion that an action under 46a-100 is substantially similar to common law cause of action available in Connecticut prior to 1818. Accordingly, the first prong of the analysis required under Skinner v. Angliker, supra, is satisfied.
 B
The second prong of the Article I, Section 19 analysis is whether the remedy provided in § 46a-100 and § 46a-104 is legal or equitable.[15] "Because at common law only legal claims were tried to a jury the state constitutional right to a trial by jury does not extend to equitable claims."[16] AssociatedInvestment Co. v. Williams Associates, supra, 153. § 46a-104
states that "[t]he court may grant a complainant in an action brought in accordance with section 46a-100 such legal andequitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs" (emphasis added).[17]
The legislature's express grant of authority to award "legal relief" is dispositive of the question whether § 46a-104
CT Page 12585 provides a legal remedy. Although no Connecticut case has addressed this precise issue, it has been the subject of ongoing litigation in the federal courts with respect to Title VII of the Civil Rights Act; 42 U.S.C. § 2000e et seq.; and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq. See, note 14, supra. It is appropriate to look to those cases and statutes for guidance. Russell v. Dean WitterReynolds, Inc., 200 Conn. 172, 510 A.2d 972 (1986).
In Lorillard v. Pons, 434 U.S. 576, 98 S. Ct 866 (1977), the Supreme Court concluded that the ADEA authorized legal relief and therefore provided the right to trial by jury. Emphasizing that § 626(c) of the Act by its terms authorizes private civil actions for "such legal or equitable relief as will effectuate the purposes of" the ADEA, the Court held that, "[t]he word `legal' is a term of art: In cases in which legal relief is available and legal rights are determined, theSeventh Amendment provides a right to jury trial. Where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary." Id., 583.[18]
In a similar context the Supreme Court has ruled that the right to jury trial is guaranteed even if the statute, like § 46a-104, provides both legal and equitable relief. "If the action is properly viewed as one for damages only, our conclusion that this is a legal claim obviously requires a jury trial on demand. And if this legal claim is joined with an equitable claim, the right to a jury trial on both claims remains intact. The right cannot be abridged by characterizing the legal claim as "incidental' to the equitable relief sought." Dairy Queen,Inc. v. Wood, 369 U.S. 469, 470 (1962).
Because § 46a-104 specifically provides for "legal relief" the statute provides for a legal remedy within the meaning of Skinner v. Angliker, supra. The defendant urges that AssociatedInvestment Co. v. Williams Associates, supra, requires a different conclusion. In that case, the court, in determining that there is not a right to jury trial under the Connecticut Unfair Trade Practices Act; General Statutes § 42-110a et seq.; emphasized the equitable nature of the remedies available to a CUTPA claimant, including injunctive relief, attorney's fees and punitive damages. "These comprehensive remedies . . . are significantly broader than those generally available at common CT Page 12586 law." Id., 160.
The Associated case is distinguishable from the present matter. First, by their terms the remedy provisions of § 42a-110a and § 46a-104 are not identical. As previously noted, § 46a-104 specifically authorizes the court to provide "legal and equitable relief." § 42a-110g(a) authorizes a plaintiff to "recover actual damages"[19] and allows the court, in its discretion to "award punitive damages and . . . such equitable relief as it deems necessary or proper."
Second, and more important, the Associated analysis was expressly predicated on its conclusion that CUTPA has its roots in the Federal Trade Commission Act and should be interpreted in accordance with decisions construing the FTCA. Id., 159. It is likely that if called upon to construe § 46a-100 the Supreme Court would likewise look to comparable federal employment discrimination law such as the ADEA to assist in its determination. Joo v. Capitol Switch, Inc., 231 Conn. 328 (1994). Such a comparison may very well result in the determination that in accordance with the terms of the statute, § 46a-104 involves a legal remedy.
 IV
In conclusion, under § 46a-100 and § 46a-104 the plaintiff is entitled to a trial by jury as guaranteed to him by Article I, Section 19 of the Connecticut Constitution. Admittedly, this is a close question, but the available historical evidence coupled with the cherished and unique role of the jury in our system of justice requires the conclusion that Article I, Section 19 provides the right to a jury trial in actions alleging unlawful employment discrimination under § 46a-100. "Maintenance of the jury as a fact finding body is of such importance and occupies so firm a place in our history that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Dimick v. Schiedt, 293 U.S. 474, 486
(1935). For the foregoing reasons the defendant's motion to strike from the jury docket is denied.
SO ORDERED.
ROBERT L. HOLZBERG JUDGE, SUPERIOR COURT CT Page 12587