[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#119)
This action was commenced by complaint by the plaintiff, New England Mobile Communications, Inc., d/b/a Kartele Cellular CT Page 13545 Phones against the defendants Bell Atlantic Nynex Mobile, Inc. ("BANM") and Metro Mobile CTS of Fairfield County, Inc.[1] The plaintiff's revised complaint alleges seven counts against the defendants.
The first count alleges that BANM improperly terminated its franchise agreement with the plaintiff, in violation of the Connecticut Franchise Act, General Statutes § 42-133f(a). The plaintiff alleges that on or about October 31, 1990, it entered into an agreement with Metro Mobile to sell cellular telephone services to the general public "on behalf of Metro Mobile." (Revised Complaint, first count, ¶ 2.) The plaintiff alleges that this agreement was a franchise agreement since the plaintiff was to sell Metro Mobile's phone services "utilizing the tradename, logo and advertising of Metro Mobile under sales and marketing programs prescribed by Metro Mobile." (Id, ¶ 3.) The plaintiff alleges that at the end of the term of the first agreement, BANM issued a series of extensions, until it executed a second agreement in December of 1993. (Id, ¶ 9.) The plaintiff further alleges that BANM improperly terminated the second agreement as of December 22, 1996. (Id., ¶¶ 12-14)
The second count alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), insofar as the "actions by [BANM] were immoral, oppressive and unscrupulous and caused substantial injury to the Plaintiff." (Id., second count, ¶ 24.) The third count sets forth a breach of contract claim, alleging that "BANM's termination of the franchise relationship and refusal to issue a further franchise agreement was a violation of the [franchise agreements]." (Id., third count, ¶ 25.) The fourth and fifth counts set forth further violations of CUTPA. The sixth count alleges that BANM "engaged in . . . interfering conduct with malice and a desire to injure Plaintiff economically and with the expectation that BANM would gain a business relationship with the third party franchisee by so acting." (Id., sixth count, ¶ 18.) The seventh count alleges that said action was a further violation of CUTPA.
The defendants filed a motion to strike the plaintiff's revised complaint, arguing that "each of the Revised Complaint's seven counts is legally insufficient." (Defendants' Motion to Strike, p. 1.) Each party submitted memoranda of law in support of their respective positions. At the short calendar hearing, the defendants withdrew their motion to strike counts six and seven. The defendants proceed with their motion to strike counts one CT Page 13546 through five of the plaintiffs revised complaint.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 270, 709 A.2d 558 (1998). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." RK Constructors, Inc. v. Fusco Corp. ,231 Conn. 381, 383, n. 2, 650 A.2d 153 (1994). "The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Alterations in original; internal quotation marks omitted.) Dodd v. Middlesex MutualAssurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997).
"If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Waters v. Autouri,236 Conn. 820, 825-26, 676 A.2d 357 (1996). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Id. Exhibits attached to a complaint are considered to be part of the complaint. See Practice Book § 141, now Practice Book (1998 Rev.) § 10-29.
The defendants move to strike counts one through five of the plaintiff's revised complaint on the ground that each count fails to state a claim upon which relief may be granted, and as such each claim is legally insufficient.[2] The defendants argue in their memorandum of law in support of their motion to strike that the relationship between the plaintiff and the defendants cannot be a franchise as a matter of law and, therefore, the first, third and fourth counts all fail. (Memorandum of Law in Support of Defendants' Motion to Strike the Plaintiff's Revised Complaint, p. 4.) The defendants argue that the "second count of the revised complaint is legally insufficient because [the plaintiff] has not alleged anything that can be construed as an `unfair trade practice' as that term has been interpreted by our courts." (Id., p. 8.) The defendants move to strike count three of the revised complaint on the grounds that it violates the statute of frauds because the agreement was not in writing. (Id., p. 9.) The defendants move to strike count four on the grounds that the plaintiff has not plead a claim of promissory estoppel. (Id., pp. 11-12.) The defendants also move to strike count five on the grounds that the plaintiff and the defendants agreed that CT Page 13547 they could compete against each other. (Id., p. 13.)
A. Count One
The first count alleges that BANM improperly terminated the franchise agreement. The defendants argue that the first count of the plaintiff's revised complaint is predicated upon the existence of a franchise relationship, but the revised complaint and the supporting exhibits[3] "establish conclusively that [the plaintiff] was not a franchise of BANM" and, therefore, the first count should be stricken as a matter of law. (Memorandum of Law in Support of Defendants' Motion to Strike the Plaintiff's Revised Complaint, p. 4.)
General Statutes § 42-133e(b) defines a "franchise" as "an oral or written agreement or arrangement in which (1) a franchisee[4] is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor[5] . . .and (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, tradename, logotype, advertising or other commercial symbol designating the franchisor or its affiliate . . ."
"[T]he franchisee must have the right to offer, sell or distribute goods or services . . . [and] the franchisor must substantially prescribe a marketing plan for the offering, selling or distributing of goods or services." Chem-Tek, Inc. v. GeneralMotors Corp. , 816 F. Sup. 123, 127 (D. Conn. 1993). "The definitions do not require that a franchisor convey goods to the franchisee for resale under the franchisor's trademark. Rather, what is required is the right to offer, sell or distribute goods under the franchisor's trademark. There is no specification of who is to convey title to the goods." Id., p. 128.
The court in Chem-Tek, noted that in determining whether a party has a right to offer, sell or distribute goods or services, the first element needed to find a franchise relationship under the Connecticut statutes, "the authority to convey title to goods under the franchisor's trademark or other distributing products or services."' Id. The court held that the parties dispute over who was selling the products at issue and thus who had the authority to convey title to the goods could not be resolved on the pleadings. Id. CT Page 13548
In the present case, the defendants argue that the plaintiff was an "agent of [BANM] for the specific and limited purpose ofsoliciting for the sale of cellular service by [BANM] . . . [BANM] did not confer any right to offer, sell, or distribute goods or services to third parties, let alone convey title to any goods to [the plaintiff]." (Citation omitted; emphasis in original.) (Memorandum of Law in Support of Defendants' Motion to Strike the Plaintiffs Revised Complaint, pp. 5-6.) The plaintiff argues that "there is no necessity to allege that the Defendants' conveyed title to any goods to Plaintiff in order to set forth a legally sufficient claim that the various agreements between the parties are franchise agreements within the meaning of the Connecticut Franchise Act. The plaintiff notes for the record, however, that at the appropriate time it will present evidence that title to goods was in fact conveyed to Plaintiff by Defendants for resale to the general public." (Plaintiffs Memorandum of Law in Support of its Objection to Defendants' Motion to Strike, p. 4.) Hence, as was the case in Chem-Tek, supra, 816 F. Sup. 123, there is a dispute as to who had the authority to convey title of the goods, and this issue cannot be resolved on the pleadings. It therefore cannot be said as a matter of law that a franchise relationship between the plaintiff and the defendants did not exist.
If the plaintiff is able to prove that a franchise agreement existed between the plaintiff and the defendants, the question of whether the defendants improperly and unlawfully terminated that agreement will also be one of fact to be determined by the trier of fact. The plaintiff is entitled to offer such evidence that may either prove or disprove the existence of a franchise agreement. See Chem-Tek, Inc. v. General Motors Corp. , supra,816 F. Sup. 129. As such, the first count of the plaintiff's revised complaint, construed in favor of the plaintiff, does set forth a legally sufficient cause of action and the motion to strike count one of the revised complaint is denied.
B. Count Two
In the second count of the revised complaint, the plaintiff alleges that the "actions by [BANM] were immoral, oppressive and unscrupulous and caused substantial injury to the Plaintiff." (Revised Complaint, second count, ¶ 24.) The plaintiff alleges that the defendants violated the Connecticut Unfair Trade Practices Act ("CUTPA") by committing "unfair trade practices" against the plaintiff. The defendants argue that the second count CT Page 13549 is insufficient as a matter of law because the plaintiff"has not alleged anything that can be construed as an unfair trade practice.'" (Memorandum of Law in Support of Defendants' Motion to Strike the Plaintiff's Revised Complaint, p. 6.)
General Statutes § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The Supreme Court has adopted the criteria set out by the federal trade commission in the "cigarette rule" to determine whether there is a violation of the act. Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 591, 657 A.2d 212 (1995). The criteria for a CUTPA violation are: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." (Alterations in original; citations omitted; internal quotation marks omitted.) Id.
The Supreme Court has held that "[a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Alterations in original; internal quotation marks omitted.) Associated Investment Co. Ltd. Partnership v. WilliamsAssociates IV, 230 Conn. 148, 156, 645 A.2d 505 (1994).
A "simple breach of contract does not offend traditional notions of fairness, and . . . standing alone does not offend public policy to invoke CUTPA." Boulevard Associates v. SovereignHotels, Inc., 72 F.3d 1029, 1038-39 (2d Cir. 1995). The Supreme Court noted, however, that "there is no . . . unfair method of competition, or unfair [or] deceptive act or practice that cannot be reached [under CUTPA]." (Alterations in original; internal quotation marks omitted.) Associated Investment Co. Ltd.Partnership v. Williams Associates IV, supra, 230 Conn. 158. CT Page 13550
"CUTPA is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Alterations in original; internal quotation marks omitted.) Service Road Corp. v. Quinn, 241 Conn. 630, 637,698 A.2d 258 (1997); see also General Statutes § 42-110b(d).
The plaintiffs revised complaint, in count two, alleges that after the defendants agreed that they would not promote "Light Usage Price Plans" or "Below Cost Selling," and would include the plaintiff in promotional efforts, they "began to offer Discounted Rate Plans' and Light Usage Price Plans' to the general public while indicating to [the plaintiff] that [the plaintiff] should continue to sell the higher priced rate plans." (Revised Complaint, second count, ¶¶ 17-20.) The plaintiff alleges that said actions "were immoral, oppressive and unscrupulous and caused substantial injury to the Plaintiff" in violation of CUTPA. (Revised Complaint, second count, ¶ 24.) Therefore, the plaintiff has set forth allegations that are legally sufficient to state a cause of action under CUTPA, and defendants' motion to strike count two of the revised complaint is denied.
C. Count Three
In the third count of the revised complaint, the plaintiff alleges breach of contract. The plaintiff alleges that "[BANM] indicated to Plaintiff that it wanted to establish a long term business relationship beyond the term of the [second] Franchise Agreement and promised a renewal option of another three year term beyond the end of the [second] Franchise Agreement." The plaintiff further alleges that the defendants breached their contract with the plaintiff by terminating the franchise relationship and refusing to issue a further franchise agreement. The defendants state that the third count fails because of the absence of a writing. The defendants argue that both the agreement between the parties and the Connecticut Statute of Frauds require that the promise allegedly broken by the defendants be in writing. (Memorandum of Law in Support of Defendants' Motion to Strike the Plaintiff's Revised Complaint, p. 10.) The plaintiff argues that the defendants' promise to renew was in writing, but that even if it was not, "because the Agreements between the parties were franchise agreements within the meaning of the Connecticut Franchise Act, Defendants were required, as a matter of law, to renew the said Franchise Agreement for an additional term." (Plaintiff's Memorandum of Law CT Page 13551 in Support of its Objection to Defendants' Motion to Strike, p. 6.)
"Courts permit the Statute of Frauds to be raised by a motion to strike when the alleged agreement falls squarely within those categories of agreements required by the statute to be in writing." Boccuzzi v. Murphy, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 112957 (September 12, 1991, Karazin, J.); see also Breen v. Phelps, 186 Conn. 86, 92,439 A.2d 1066 (1982) (noting that the trial court in granting the motion to strike found that the writing on the check was insufficient to satisfy the statute of frauds).
The statute of frauds, General Statutes § 52-550(a), provides that "[n]o civil action may be maintained . . . unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . upon any agreement that is not to be performed within one year from the making thereof."
The plaintiff, in the third count of the revised complaint, alleges that "[BANM] indicated to Plaintiff that it wanted to establish a long term business relationship beyond the term of the [second] Franchise Agreement and promised a renewal option of another three year term beyond the end of the [second] Franchise Agreement." (Revised Complaint, third count, ¶ 24.) The third count of the plaintiffs revised complaint does not allege that this promise was memorialized in writing. Since it cannot be performed within one year from the making, it falls squarely within the statute of frauds. As such, the defendants' motion to strike the third count of the plaintiffs revised complaint is granted.
D. Count Four
The fourth count of the plaintiff's revised complaint alleges a violation of CUTPA, specifically that BANM refused to renew, and terminated, the franchise. The defendants argue that the fourth count should be stricken since no franchise was ever created, and therefore, CUTPA does not apply. However, as provided above (see Part A — Count One), it cannot be said, in the present case, that a franchise relationship did not exist as a matter of law. The defendants further argue that the fourth count is insufficient because the plaintiff "has not sufficiently plead a claim of promissory estoppel." (Memorandum of Law in Support of Defendants' Motion to Strike the Plaintiff's Revised CT Page 13552 Complaint, p. 12.)
"Under the law of contract, a promise is not generally enforceable unless it is supported by consideration . . . This court has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor." (Citations omitted; internal quotation marks omitted.) D'Ulisee-Cupo v. Board of Directors of Notre Dame HighSchool, 202 Conn. 206, 213, 520 A.2d 217 (1987).
The doctrine of promissory estoppel, under § 90 of the Restatement Second, is "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance [and] is binding if injustice can be avoided only by enforcement of the promise . . . A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promissory which a promisor could have reasonably have expected to induce reliance." Id.
"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) Chotkowski v. State,240 Conn. 246, 268, 690 A.2d 368 (1997).
The plaintiff, in count four of the revised complaint, alleges that "BANM requested that [the plaintiff] submit a long range business plan to BANM as a prelude to negotiations of the terms of a Franchise renewal agreement . . . [and that at] significant expense, [the plaintiff] retained an outside consultant to prepare an extensive presentation which was scheduled to be presented to representatives of the Defendant in September of 1996 . . . Thereafter, BANM . . . cancelled the presentation and unilaterally terminated the franchise." (Revised Complaint, fourth count, ¶¶ 24, 25, 28.)
Construing the facts alleged in the complaint in the light most favorable to the plaintiff, the facts alleged do not support a cause of action for promissory estoppel. The allegations in count four of the revised complaint "[reveal] no statement of any CT Page 13553 particular promise upon which the plaintiff might have reason to rely." Barrows v. United Aluminum Corp. , Superior Court, judicial district at New Haven (May 16, 1997, Silbert, J.) (holding that the motion to strike the count sounding in promissory estoppel is granted). Furthermore, the plaintiff fails to allege a "definite promise" upon which it could reasonably rely. In the present case, the plaintiff could not reasonably rely on the fact that it would be awarded a renewed contract simply because it was invited to prepare and make a presentation.
To the extent that the plaintiffs CUTPA claim is based on promissory estoppel, it fails because the plaintiff has not alleged sufficient facts to sustain a claim of promissory estoppel. Therefore, the motion to strike count four of the plaintiff's revised complaint is granted.
E. Count Five
The fifth count of the plaintiff's revised complaint alleges a further CUTPA violation, specifically that BANM committed unfair trade practices. The plaintiff alleges that "[a]fter BANM notified the Plaintiff of its decision not to renew the Franchise relationship and before the effective date of the termination [the plaintiff] was required to continue to exclusively sell BANM's services. During this period, which coincided with the peak of the holiday season, BANM offered retail sales promotions to the general public without giving [the plaintiff] the opportunity to participate in this promotion." (Revised Complaint, fifth count, ¶ 15.) The plaintiff alleges that this conduct by the defendants was "immoral, oppressive and unscrupulous and caused substantial injury to the Plaintiff." (Id., ¶ 16.)
The defendants move to strike this count arguing that the actions by the defendants were nothing more than competition, which is permitted by the Connecticut antitrust law and the agreement of the parties. (Memorandum of Law in Support of Defendants' Motion to Strike the Plaintiff's Revised Complaint, p. 13 ) The requirements for a cause of action sounding in a CUTPA violation have been set forth in detail above (Part B — Count Two). As stated above, and applied to this fifth count, the plaintiff has set forth allegations which are legally sufficient to form a cause of action under CUTPA. Whether the conduct of the defendants amount to unfair competition that is "immoral, oppressive and unscrupulous and caused substantial CT Page 13554 injury to the Plaintiff" is a question of fact. Therefore, as a matter of law, the plaintiff has set forth a legally sufficient cause of action under CUTPA and the motion to strike the fifth count of the plaintiffs revised complaint is denied.
The defendants' motion to strike counts three and four are granted.
The defendants' motion to strike counts one, two and five are denied.
KARAZIN, J.